Filed 3/5/24  P. v. Salazar CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050714 |
| Plaintiff and Respondent, | (San Benito County Super. Ct. No. CR2100954) |
| v. | |
| JOSE LUIS SALAZAR, JR., | |
| Defendant and Appellant. | |

A jury convicted defendant Jose Luis Salazar, Jr. of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)[1]).  The trial court sentenced Salazar to the middle term of three years in prison, with credit for having already served that time.

We appointed counsel to represent Salazar on appeal.  Counsel filed a brief asking this court to review the record to determine whether there are any arguable issues on appeal.  (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Salazar was advised of his right to file a supplemental brief, and he filed a letter brief that we have considered.  Finding no arguable error in the appellate record that would result in a disposition more favorable to Salazar, we affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural History*

In December 2021, the San Benito County District Attorney filed an information charging Salazar with attempted murder (§§ 664, 187 [count 1]) and assault with a deadly weapon (§ 245, subd. (a)(1) [count 2]).

In January 2022, Salazar's defense counsel asked the trial court to appoint a psychotherapist to examine Salazar and provide counsel information about a possible insanity plea or defense based on Salazar's emotional condition. The court granted the request (Evid. Code, § 1017).

In March 2022, defense counsel declared a doubt about Salazar's competence to stand trial. The trial court suspended the proceedings and appointed a psychotherapist to evaluate Salazar's competence (§ 1368). In June 2022, after receiving the psychotherapist's report, the court found Salazar competent to stand trial.

On December 1, 2022, the jury found Salazar guilty on count 2 but failed to reach a verdict on count 1. Salazar defense counsel moved to dismiss count 1 under section 1385. The prosecutor did not object. The trial court granted the motion and dismissed count 1 in the interest of justice.

On January 9, 2023, the trial court sentenced Salazar to the middle term of three years in prison. Salazar's defense counsel did not object to that term. Further, counsel entered a stipulation with the prosecutor on the issue of presentence custody credits, providing Salazar with 1,095 days (or three years) of credit. The court accepted the stipulation and deemed the imposed sentence served. The court suspended all fines and fees, finding that Salazar did not have the ability to pay them.

Salazar appealed.

B.  *Evidence Presented at Trial*

      1.  Prosecution Evidence

On the morning of August 12, 2021,[2] 25-year-old Salazar was at home with his father and mother.  When Salazar made his way downstairs to the home's kitchen, his mother said " 'good morning' " to him.  He did not respond.  Salazar and his father began to argue.  Salazar's father told Salazar to leave the house.  Salazar pushed his father to the floor, hit him, and cut him with a knife.  Salazar's mother put a chair between the two men and separated them.  Salazar's father and mother left the house and called the police.

The police found Salazar walking nearby with a knife clipped to his pants and injuries to his hand.  Salazar told the police that he had stabbed his father in " 'self-defense.' "

      2.  Defense Evidence

Salazar testified in his own defense.  Salazar explained that after waking up on the morning of August 21, he headed downstairs while listening to a podcast through earphones.  As Salazar prepared himself breakfast, he noticed his father shouting and pacing behind him.[3]  Salazar removed his earphones and explained that he had not heard his mother's greeting.  Salazar's father shouted "abusive insults" at Salazar.  Salazar testified that his father "treats everybody like that" and opined that his father is "evil."  Salazar testified further that his father had "[n]ever" punched him before and "never really hit" him during his childhood.

Salazar asked his father to be considerate, but his father continued shouting.  After Salazar sat down with his breakfast, his father rushed toward him, grabbed his food, and

---

[2] Unless otherwise indicated, all dates were in 2021.

[3] Salazar referred to his parents as "the man and the woman of the other party," explaining that "referring to them as mom and dad is difficult because . . . it was a painful and traumatic situation that occurred to [him]."  For consistency and clarity, we use "father," "mother," and "parents" when summarizing Salazar's testimony.

threw it into the sink.  Salazar's father shouted, " 'Get your shit and get the fuck out of my house.' "

Salazar went upstairs, changed his clothes, and returned downstairs "want[ing] to have a civilized conversation and not just end this on a bad note."  When Salazar asked his father if he cared about him because he really needed his father's help, his father "just kind of ma[de] fun of" Salazar and approached him.  Salazar's father "attacked [Salazar] by punching."  Salazar defended himself "by punching [his father] six consecutive times."  Salazar's mother "attacked [Salazar] by pulling [his] head by [his] hair" as he "finished with defending" himself.  Salazar "instinctively threw a punch" that hit his mother and "managed to get her away."  Salazar's father initiated another attack by punching Salazar.  He punched his father back "four consecutive times."  Salazar's mother sprinted at him and "rammed a chair into [him]."  His "face went flush" and "the impact made [him] go extremely cold."

At that point Salazar "realized that it was more than just a dangerous altercation that [he] was forced into, now it was a lethal altercation."  He "yelled at [his parents] to get away from [him]."  "As they continued their attack and [he] yelled 'get away from me,' " he "pulled out [his] everyday carry, which is a [pocketknife] that [he] always ha[s], and [he] started swinging it" in the shape of "the infinity sign."  Salazar's parents continued their attack on him, and he took three steps back.  Salazar testified:  "I wasn't trying to hurt them.  I remember he was striking at me and I was trying not to get his face, I was trying not to get his arms, so I was essentially, as he's striking me, working my way around them."

After his parents stopped attacking him, Salazar left the house.  He noticed that his hand had been injured—it was "broken, severely swollen, [and] bleeding from the impact of the chair."  He decided to walk to a hospital.  As he was walking, the police "confronted [him] at gunpoint."

4

## II.  DISCUSSION

We appointed counsel to represent Salazar on appeal.  After reviewing the record, appointed counsel filed a brief raising no issues.  Counsel advised Salazar that he may personally submit a supplemental brief.  Thereafter, this court received from Salazar a handwritten letter brief.

In his letter brief, Salazar appears to assert that the prosecutor committed misconduct during his closing argument by "present[ing] evidence out of context as a manipulative tactic" so "[a]s to deceive the jury" into believing Salazar "attacked the other party when in reality it was in perfect self[-]defense."  In the same vein, Salazar contends that his defense counsel, in closing argument, "didn't even inform the jury that [Salazar] was injured by a deadly weapon (chair)."  Salazar further contends that the prosecutor told the jurors in closing argument to "skip over" and "ignore certain verdict forms" to find him guilty.  Additionally, Salazar asserts that his defense counsel only spoke to him "twice about the case [and counsel] didn't even know the details[,] [e]ssentially going off of the corrupt presentation that [the prosecutor] provided."

To the extent Salazar contends in his letter brief that the prosecutor committed misconduct in argument, those claims were not preserved for appellate review by a timely objection at trial.  (*See People v. Seumanu* (2015) 61 Cal.4th 1293, 1328 ["It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished . . ., is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal."].)

Furthermore, to the extent that Salazar attempts to assert that his defense counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's misconduct or to adequately prepare and present a defense, Salazar's assertions lack the factual support required in a direct appeal.

"Prosecutors have wide latitude to discuss and draw inferences from the evidence at trial." (*People v. Lucas* (1995) 12 Cal.4th 415, 473.)  " 'A defendant whose counsel

did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)  However, a "mere failure to object to evidence or argument seldom establishes counsel's incompetence."  (*People v. Ghent* (1987) 43 Cal.3d 739, 772.)  Additionally, "[t]he decision of how to argue to the jury after the presentation of evidence is inherently tactical" and defense counsel is not incompetent for making that decision based "on how the trial actually went, not how it might have gone."  (*People v. Freeman* (1994) 8 Cal.4th 450, 498.)

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.' "  (*People v. Hoyt* (2020) 8 Cal.5th 892, 958; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

A court can reject a claim of ineffective assistance of counsel if the defendant fails to establish either element of the *Strickland* standard.  (See *Strickland*, *supra*, 466 U.S. at p. 687; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1008, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Based on our review of the record, Salazar cannot satisfy his burden on appeal to show that his defense counsel performed deficiently. Salazar has not shown that there could be no satisfactory explanation for his defense counsel's failure to object to the prosecutor's argument that Salazar used more force than was reasonably necessary to defend himself against his parents. The record does not support Salazar's allegation of prosecutorial manipulation and deception of the jury. Salazar's further assertion that his defense counsel did not inform the jury that he (Salazar) was injured by a chair is contradicted by the record. In his closing argument, defense counsel told the jurors that Salazar's mother "pushe[d] the chair into him," thereby injuring his hand.[4] That argument is consistent with Salazar's own testimony.

Regarding the verdict forms, the prosecutor suggested in his closing argument that the jurors should start their deliberation by considering count 2 (because "it's the easiest charge") and finding Salazar guilty of assault with a deadly weapon. The prosecutor also said that the jurors did not have to follow his suggestion and could "certainly [] do it any way [they] want." After explaining how the evidence proved Salazar's guilt of assault with a deadly weapon, the prosecutor stated further: "So, as a result, the simple assault verdict form is not one that you have to consider when you find the defendant guilty, as you ought, of assault with a deadly weapon, do not complete the simple assault form, because it is a lesser included. You only get there if, which you should not, you find the defendant not guilty of count two."

The prosecutor did not plainly state that the jurors could not consider the lesser offense (simple assault) until they reached a verdict on the greater offense. Rather, the prosecutor's argument was consistent with the trial court's instruction to the jurors (using CALCRIM No. 3518) about their deliberations and completion of the verdict forms. In addition, the court instructed the jurors that if an attorney's comments on the law

[4] Defense counsel argued in part, "She . . . pushes the chair into him. If you're like this, you're gonna get hit. If you lead like this, you're gonna get hit in the hand."

7

appeared to conflict with the court's instructions, the jurors were required to follow the court's instructions. Under these circumstances, Salazar has not demonstrated that his defense counsel's failure to object to the identified portion of the prosecutor's closing argument amounts to constitutionally deficient performance.

Regarding Salazar's assertion that he only spoke to his defense counsel twice, the appellate record does not include information about the number or substance of any conversations Salazar had with his counsel. Furthermore, Salazar's related assertion that his counsel did not know the details of the case and essentially followed the prosecutor's "corrupt presentation" is not supported by the record. Counsel cross-examined every prosecution witness (including Salazar's parents, extensively) and questioned Salazar in a manner consistent with the self-defense theory. Counsel also presented a closing argument that discussed the evidence in some detail and explained why "an acquittal [wa]s warranted [i]n this case on both counts because of self-defense."

"A defendant who raises the [ineffective assistance] issue on appeal must establish deficient performance based upon the four corners of the record." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) Salazar's current assertions that his defense counsel failed to adequately prepare, know the facts of the case, and present a defense are not supported by the appellate record.

For these reasons, and having carefully reviewed the entire appellate record, we conclude that Salazar's contentions do not amount to arguable issues in this appeal. Further, we are satisfied appointed appellate counsel for Salazar has complied with counsel's responsibilities and there are no arguable issues. (*People v. Kelly* (2006) 40 Cal.4th 106, 118–124; *Wende*, *supra*, 25 Cal.3d at pp. 441–442.)

### III. DISPOSITION

The judgment is affirmed.

8

_____
                                          Danner, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Bromberg, J.


**H050714**
*People v. Salazar*